# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

SARAH ADAMS,

                          Plaintiff,

              -against-

JUAN J. PILARTE, M.D., THE BRONX-
LEBANON HOSPITAL CENTER,
MONTEFIORE MEDICAL CENTER
ORGANON USA, INC.
ORGANON PHARMACEUTICALS USA, INC
ORGANON INTERNATIONAL, INC,
SCHERING-PLOUGH CORPORATION AND
MERCK & COMPANY, INC.

   *111 EAST 210th ST*
   *BX, NY*

                          Defendants.

Index No: 310425/11
Date Purchased:

Plaintiff designates
Bronx County as the
place of trial

**SUMMONS**

The basis of venue
is Plaintiff's
residence

11 NOV 23  PH 12:2
COUNTY CLERK
BRONX COUNTY

RECEIVED

To the above named Defendants:

        YOU ARE HEREBY SUMMONED to answer the Amended Complaint in this action
and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to
serve a Notice of Appearance, on Plaintiff's attorney within 20 days after the service of this
Summons, exclusive of the day of service (or within 30 days after the service is complete if this
Summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.



2

12/28/2011 11:13 FAX   2128284189          WORKER'S_COMPENSATION          ☑ 007/032

Dated: New York, New York
       November 22, 2011

RHEINGOLD VALET RHEINGOLD
McCARTNEY & GIUFFRA LLP
Attorneys for Plaintiff

By: _____
    Sherri L. Plotkin, Esq.
    Paul D. Rheingold, Esq.
    Office & P.O. Address
    113 East 37th Street
    New York, NY 10016
    Tel.: 212-684-1880
    113 East 37th Street
    New York, NY 10016
    (212) 684-1880
    (212) 689-8156 Fax

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

SARAH ADAMS,

     Plaintiff,

   -against-

JUAN J. PILARTE, M.D., THE BRONX-
LEBANON HOSPITAL CENTER,
MONTEFIORE MEDICAL CENTER,
ORGANON USA, INC.
ORGANON PHARMACEUTICALS USA, INC
ORGANON INTERNATIONAL, INC.
SCHERING-PLOUGH CORPORATION
MERCK & COMPANY, INC.

     Defendants.

Index No. 3 1 0 4 2 5 / 11

**VERIFIED COMPLAINT**

Plaintiff, complaining of the defendants, by her attorneys Rheingold, Valet, Rheingold
McCartney & Giuffra LLP respectfully alleges, upon information and belief, the following:

### AS AND FOR A FIRST CAUSE OF ACTION

1.  That at all times hereinafter mentioned, defendant JUAN J. PILARTE, M.D.
(hereinafter referred to as defendant "DR. PILARTE") was a physician duly licensed to practice
medicine in the State of New York and held himself out to the public as a skilled and trained
physician duly qualified to render medical services.

2.  That at all times hereinafter mentioned, defendant DR. PILARTE maintained an
office for the practice of his profession at 1417 Wythe Place, in the County of the Bronx, City
and State of New York.

3.  That at all times hereinafter mentioned, defendant DR. PILARTE represented
himself to be a physician specializing in the field of pediatrics.

4.     That at all times hereinafter mentioned, defendant DR. PILARTE held himself out to the public, and more particularly, to the plaintiff herein, as possessing the proper degree of learning and skill and that he undertook to use reasonable care and diligence in the treatment of the infant plaintiff herein.

5.     That at all times hereinafter mentioned, defendant THE BRONX-LEBANON HOSPITAL CENTER (hereinafter referred to as defendant "BRONX LEBANON") was a professional corporation duly organized and existing under and by virtue of the laws of the State of New York.

6.     That at all times hereinafter mentioned, defendant BRONX LEBANON was the owner of a certain hospital facility known and designated as the Bronx-Lebanon Hospital Center located at 1650 Grand Concourse, in the County of the Bronx, City and State of New York.

7.     That at all times hereinafter mentioned, defendant BRONX LEBANON, by its agents, servants, staff members, employees and/or independent contractors, operated, managed, maintained, supervised and controlled the aforesaid hospital facility known and designated as the Bronx-Lebanon Hospital Center located at 1650 Grand Concourse, in the County of the Bronx, City and State of New York.

8.     That at all times hereinafter mentioned, defendant BRONX LEBANON used and employed physicians, staff members, residents, interns, emergency room physicians, nurses and others who were employed, authorized, contracted, retained and/or permitted by defendant BRONX LEBANON to provide medical care and treatment and to perform all necessary and proper functions pertaining to any medical treatment to all persons cared for and treated at the aforesaid Bronx Lebanon hospital facility.

9.     That at all times hereinafter mentioned, defendant BRONX LEBANON, its agents, servants, staff members, independent contractors and/or employees, for a consideration, offered to render competent and adequate medical services, care and attention to patients and held itself out to be able to furnish adequate, competent and proper medical treatment, hospital facilities and personnel to patients at its aforesaid Bronx Lebanon hospital facility.

10.     That at all times hereinafter mentioned, defendant BRONX LEBANON, in rendering hospital and medical care and treatment to the plaintiff herein owed her the duty to use a reasonable degree of learning and skill, the duty to use reasonable care and diligence in the exercising of that learning and skill, the duty to employ approved methods in general use and the duty to use their best judgment in the care and treatment of the plaintiff.

11.     That at all times hereinafter mentioned, defendant MONTEFIORE MEDICAL CENTER (hereinafter referred to as defendant "MONTEFIORE") was a domestic not-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York.

12.     That at all times hereinafter mentioned, defendant MONTEFIORE was the owner of a certain hospital facility known and designated as the Montefiore Medical Center located at 111 East 210th Street, in the County of the Bronx, City and State of New York.

13.     That at all times hereinafter mentioned, defendant MONTEFIORE, by its agents, servants, staff members, employees and/or independent contractors, operated, managed, maintained, supervised and controlled the aforesaid hospital facility known and designated as the Montefiore Hospital Center located at 111 East 210th Street, in the County of the Bronx, City and State of New York.

14.    That at all times hereinafter mentioned defendant MONTEFIORE was the owner of The Children's Hospital at Montefiore, Bronx, New York.

15.    That at all times hereinafter mentioned The Children's Hospital at Montefiore was a division and/or department of the defendant MONTEFIORE.

16.    That at all times hereinafter mentioned defendant MONTEFIORE was doing business as The Children's Hospital at Montefiore.

17.    That at all times hereinafter mentioned defendant MONTEFIORE, by its agents, servants, staff members, employees and/or independent contractors, operated, managed, maintained, supervised and controlled the aforesaid Children's Hospital at Montefiore, Bronx, New York.

18.    That at all times hereinafter mentioned defendant MONTEFIORE operated a program known as The Montefiore School Health Program.

19.    That at all times hereinafter mentioned defendant MONTEFIORE, through its Children's Hospital at Montefiore, operated a program known as the Montefiore School Health Program.

20.    That at all times hereinafter mentioned defendant MONTEFIORE operated the aforesaid program known as The Montefiore School Health Program at the DeWitt Clinton High School located at 100 W. Mosholu Parkway South, in the County of the Bronx, City and State of New York.

21.    That at all times hereinafter mentioned defendant MONTEFIORE, through its Children's Hospital at Montefiore, operated the aforesaid program known as The Montefiore School Health Program at the DeWitt Clinton High School located at 100 W. Mosholu Parkway South, in the County of the Bronx, City and State of New York, among other school locations.

- 4 -

22.    That at all times hereinafter mentioned the aforesaid program at the DeWitt Clinton High School owned and operated by the defendant MONTEFIORE known as The Montefiore School Health Program provided medical care, services and treatment to DeWitt Clinton High School students, including but not limited to, gynecological related care and treatment.

23.    That at all times hereinafter mentioned, defendant MONEFIORE used and employed physicians, staff members, residents, interns, surgeons, nurses and other health care professionals who were employed, authorized, contracted, retained and/or permitted by defendant MONTEFIORE to provide medical care and treatment and to perform all necessary and proper functions pertaining to any medical treatment to all persons cared for and treated at the aforesaid DeWitt Clinton High School through the aforesaid Montefiore School Health Program.

24.    That at all times hereinafter mentioned, defendant MONETFIORE, its agents, servants, staff members, independent contractors and/or employees, offered to render competent and adequate medical services, care and attention to students at the DeWitt Clinton High School who were participating in the Montefiore School Health Program and held itself out to be able to furnish adequate, competent and proper medical treatment, medical facilities and personnel to students at the DeWitt Clinton High School.

25.    That at all times hereinafter mentioned, defendant MONTEFIORE, in rendering medical care and treatment to the plaintiff herein owed her the duty to use a reasonable degree of learning and skill, the duty to use reasonable care and diligence in the exercising of that learning and skill, the duty to employ approved methods in general use and the duty to use their best judgment in the care and treatment of the plaintiff.

8

26.     That at all times hereinafter mentioned, defendant DR. PILARTE was an agent of defendant BRONX LEBANON.

27.     That at all times hereinafter mentioned, defendant DR. PILARTE was an employee of defendant BRONX LEBANON.

28.     That at all times hereinafter mentioned, defendant DR. PILARTE was a staff member of defendant BRONX LEBANON.

29.     That at all times hereinafter mentioned, defendant DR. PILARTE was an Attending Physician at defendant BRONX LEBANON.

30.     That at all times hereinafter mentioned defendant DR. PILARTE was an independent contractor at defendant BRONX LEBANON.

31.     That commencing on or about January 2007 up through and including July 2010, the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant DR. PILARTE.

32.     That commencing on or about January 2007 up through and including July 2010 the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant DR. PILARTE for treatment of, among other things, pediatric care and treatment.

33.     That commencing in or about March 2010 up through and including June 2010, the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant MONTEFIORE at its aforesaid Montefiore School Health Program located within DeWitt Clinton High School, Bronx, New York.

34.     That commencing in or about March 2010 up through and including June 2010, the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant

- 6 -

MONTEFIORE at its aforesaid Montefiore School Health Program located within DeWitt Clinton High School, Bronx, New York for treatment of, among other things, gynecological care and services.

35.    That commencing on or about June 2, 2010 up through and including June 8, 2010, the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant BRONX LEBANON.

36.    That commencing on or about June 2, 2010 up through and including June 8, 2010, the plaintiff SARAH ADAMS was a patient of, and under the care and treatment of defendant BRONX LEBANON for treatment of, among other things, complaints of shortness of breath and chest pain.

37.    That at all times hereinafter mentioned, defendants, each of them, in rendering medical care and treatment to the plaintiff owed her the duty to use a reasonable degree of learning and skill, the duty to use reasonable care and diligence in the exercising of that learning and skill, the duty to employ approved methods in general use and the duty to use its best judgment in the care and treatment of the plaintiff.

38.    That the defendant DR. PILARTE, his agents, servants, staff members, employees and/or independent contractors, was negligent and committed malpractice in his care and treatment of the plaintiff herein; in failing to properly treat, care for, observe, monitor, administer to, diagnose, test and otherwise attend to the plaintiff herein for the conditions with which she presented; in failing to treat the plaintiff in accordance with the proper and accepted standards of medical care and treatment; in carelessly and negligently failing to obtain a full, thorough and complete history from the plaintiff that she had been prescribed and was using a contraceptive device called the NuvaRing; in carelessly and negligently failing to timely and properly diagnose

- 7 -

that the plaintiff was suffering from complications associated with the use of the NuvaRing, including but not limited to shortness of breath, palpitations and chest pain; in carelessly and negligently misdiagnosing the condition from which the plaintiff was suffering; in carelessly, negligently and improperly diagnosing the plaintiff as suffering from asthma when in fact she was suffering from complications associated with the use of the NuvaRing including pulmonary embolism; in carelessly and negligently administering medication which is contraindicated for use in patients suffering from thereby causing and creating the development of further complications and damages; in failing to timely and properly recognize the signs and symptoms of pulmonary embolism; in failing to conduct proper and complete physical examinations of the plaintiff; in performing perfunctory examinations at best; in failing to timely and properly treat the pulmonary embolism; in failing to timely and properly recognize, be aware of and/or be cognizant of the significance of the complaints, signs and symptoms with which the plaintiff presented, including chest pains, palpitations and shortness of breath; in carelessly and negligently advising the plaintiff that she was to return to school; in failing, neglecting and omitting to timely and properly refer the plaintiff to the appropriate specialists in the appropriate fields to medicine to determine the cause for the plaintiff's complaints of chest pain, palpitations and shortness of breath; in depriving plaintiff of the opportunity to be cured of the conditions from which she was suffering; in causing and creating a significant delay in the proper and indicated course of treatment; in failing to exercise that degree of care and caution commensurate with all the facts and circumstances which a reasonably prudent physician would have exercised; in deviating and departing from the good and accepted standards of medical and pediatric care and treatment; that in failing to perform all the necessary and required tests, in failing to make a proper and timely diagnosis, and in failing to afford the proper and correct course of treatment

- 8 -

for the condition from which the plaintiff SARAH ADAMS was suffering, the defendant DR.
PILARTE did cause and create the development of serious and permanent injuries,
complications and damages, including pulmonary embolism, cardiac arrest and brain damage,
among other injuries; in violating the applicable laws, rules, statutes and regulations in such
cases made and provided; and he was otherwise careless and negligent and failed to act in a
reasonable and acceptable medical manner.  Plaintiff also relies on the doctrine of res ipsa
loquitur but hereby reserves her right to prove this defendant was negligent as more specifically
set forth herein.

39.    The defendant MONTEFIORE, its agents, servants, staff members, employees
and/or independent contractors were negligent and committed malpractice in their care and
treatment of the plaintiff herein; in failing to properly treat, care for, observe, monitor, administer
to, diagnose, test and otherwise attend to the plaintiff herein for the conditions with which she
presented; in failing to treat the plaintiff in accordance with the proper and accepted standards of
medical care and treatment; in carelessly and negligently prescribing contraindicated
contraceptive methods to the plaintiff, to wit, the NuvaRing; in failing, neglecting and omitting
to obtain a full, thorough and proper medical history from the plaintiff before prescribing the
NuvaRing; in failing to be aware of, recognize and/or be cognizant of the contraindications for
the use of NuvaRing particularly in patients with family histories of heart disease; in failing,
neglecting and omitting to perform, order, request and/or perform any of the necessary, required,
indicated and warranted tests on the plaintiff to determine if in fact she was an appropriate
candidate for the NuvaRing product; in failing, neglecting and omitting to obtain copies of the
plaintiff's prior medical records before prescribing the use of the NuvaRing; in failing,
neglecting and omitting to inform and/or advise the plaintiff of the risks, side effects and

- 9 -

12/28/2011 11:14 FAX  2128284189            WORKER'S_COMPENSATION                    Ø017/032

complications associated with the use of the NuvaRing; in failing to timely, properly and adequately supervise the medical care and treatment being offered and rendered by the Montefiore School Health Program at the DeWitt Clinton High School; in carelessly and negligently failing to timely and properly diagnose that the plaintiff was suffering from complications associated with the use of the NuvaRing, including pulmonary embolism; in failing, neglecting and omitting to have the necessary, required, proper and indicated safety checks, monitoring, guidelines, policies and supervision to ensure that the students being treated through the auspices of the Montefiore School Health Program at the DeWitt Clinton High School were receiving the proper, careful and appropriate medical care and treatment consistent with the prevailing standards existing in the medical community; in depriving plaintiff of the opportunity to be cured of the conditions from which she was suffering; in deviating and departing from the good and accepted standards of hospital, medical and clinic care and practice; that in failing to perform all the necessary and required tests, in carelessly and negligently prescribing a contraindicated course of treatment for the plaintiff, to wit, the use of the NuvaRing, and in failing to afford the proper and correct course of treatment for the condition from which the plaintiff SARAH ADAMS was suffering, the defendant MONTEFIORE, its agents, servants, staff members, employees and/or independent contractors did cause and create the development of serious and permanent injuries, complications and damages, including pulmonary embolism, cardiac arrest, and brain damage, among other injuries; in violating the applicable laws, rules, statutes and regulations in such cases made and provided; and MONTEFIORE was otherwise careless and negligent and failed to act in a reasonable and acceptable medical manner.  Plaintiff also relies on the doctrine of res ipsa loquitur but hereby reserves her right to prove this defendant was negligent as more specifically set forth herein.

- 10 -

⒔

40.    That the defendant BRONX LEBANON, its agents, servants, staff members, employees and/or independent contractors were negligent and committed malpractice in their care and treatment of the plaintiff herein; in failing to properly treat, care for, observe, monitor, administer to, diagnose, test and otherwise attend to the plaintiff herein for the conditions with which she presented; in failing to treat the plaintiff in accordance with the proper and accepted standards of medical care and treatment; in failing, neglecting and omitting to obtain a full, thorough and proper medical history from the plaintiff when she first presented to the BRONX LEBANON emergency room on June 2, 2010; in failing to timely and properly consider that the plaintiff's complaints with which she presented, including chest pains, palpitations and shortness of breath, were classic signs and symptoms of complications emanating from the use of the NuvaRing product; in failing, neglecting and omitting to realize, recognize, be aware of and/or be cognizant of the significance and serious nature of the aforesaid complaints with which the plaintiff presented; in carelessly and negligently failing to timely and properly diagnose that the plaintiff was suffering from complications associated with the use of the NuvaRing, including shortness of breath, palpitations and chest pain; in carelessly and negligently misdiagnosing the condition from which the plaintiff was suffering; in carelessly, negligently and improperly diagnosing the plaintiff as suffering from asthma when in fact she was suffering from complications associated with the use of the NuvaRing; in failing to timely and properly recognize the signs and symptoms of pulmonary embolism; in failing to timely and properly treat pulmonary embolism; in carelessly, negligently and prematurely discharging the plaintiff from the BRONX LEBANON emergency room on June 2, 2010 when she presented with the aforesaid complaints of chest pains, palpitations and shortness of breath; in failing and neglecting to timely diagnose and treat the development of pulmonary emboli; in failing, neglecting and

- 11 -

omitting to timely and properly perform all the necessary, warranted, indicated and appropriate tests to determine the etiology of the plaintiff's aforesaid complaints so as to be able to make a proper, accurate, correct and timely diagnosis and render the necessary care and treatment; in causing and creating the development of heart failure; in depriving the plaintiff of the opportunity to be cured of the conditions from which she was suffering; in deviating and departing from the good and accepted standards of hospital and medical care and practice as aforesaid; that in failing to timely and properly diagnose the condition from which the plaintiff was suffering, in failing to timely and properly perform all the necessary and required tests, in prematurely discharging the plaintiff from the BRONX LEBANON emergency room, and in failing to afford the proper and correct course of treatment for the condition from which the plaintiff SARAH ADAMS was suffering, the defendant BRONX LEBANON, its agents, servants, staff members, employees and/or independent contractors did cause and create the development of serious and permanent injuries, complications and damages, including, but not limited to, heart failure and cardiopulmonary arrest, among other injuries; in violating the applicable laws, rules, statutes and regulations in such cases made and provided; and BRONX LEBANON was otherwise careless and negligent and failed to act in a reasonable and acceptable medical manner. Plaintiff also relies on the doctrine of res ipsa loquitur but hereby reserves her right to prove this defendant was negligent as more specifically set forth herein.

41.    That the aforesaid occurrence and resulting injuries and disabilities to the plaintiff were caused wholly and solely by reason of the carelessness, negligence and malpractice of defendants, each of them, their agents, servants, staff members, employees and/or independent contractors, and with no fault or lack of care on the part of plaintiff contributing thereto.

- 12 -

42.    That by reason of the foregoing, the plaintiff sustained serious and permanent personal injuries and complications; a severe shock to her nervous and neurological systems and certain internal injuries and upon information and belief, some of these injuries are permanent; she has been confined to bed and home for some time; she necessarily received and will continue to receive hospital and medical care, attention, treatment and medicines in an endeavor to cure or heal herself of said injuries, as a result of which expenses were incurred and will continue to be incurred and she has been compelled to suffer physical pain, mental anguish, emotional distress and loss of enjoyment of life as a result thereof.

43.    That this action falls within one or more of the exceptions set forth in C.P.L.R. 1602.

44.    That the amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION FOR LACK OF INFORMED CONSENT:

45.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the First Cause of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

46.    That defendants, their agents, servants, staff members, employees and/or independent contractors, failed to disclose all of the facts that a reasonable physician, clinic and/or hospital, under similar circumstances, would explain or disclose to a patient including a failure to disclose the risks and benefits of the treatment and procedures performed; the risks, complications, side effects and consequences associated with the use of the NuvaRing; the risks, complications, side effects and consequences associated with the use of the NuvaRing in a

76

patient with a family history of heart disease; and the alternatives thereto and the risks and benefits relating to the alternatives and they otherwise failed to properly, adequately and fully inform the plaintiff and/or her family.

47.  That a reasonably prudent person in the plaintiff's position would not have undergone the treatment and procedures performed if she had been fully informed and that the lack of informed consent is a proximate cause of the injuries sustained for which recovery is sought.

48.  That the treatment rendered by defendants was not emergency treatment, an emergency procedure or emergency surgery.

49.  That the amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR HOSPITAL AND CLINIC NEGLIGENCE:

50.  Plaintiff repeats, reiterates and realleges each and every allegation contained in the First and Second Causes of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

51.  That defendants MONTEFIORE and BRONX LEBANON had an obligation, responsibility and duty to plaintiff to staff its facilities at the aforesaid Montefiore School Health Program at the DeWitt Clinton High School and Bronx Lebanon Hospital with competent and qualified medical personnel.

52.  That at all times hereinafter mentioned, defendants MONTEFIORE and BRONX LEBANON failed and neglected to utilize and apply proper and acceptable standards and criteria in its hiring of its physicians and other medical personnel; failed and neglected to evaluate and

(7

properly assess the performance of those physicians applying for employment or professional privileges or renewal thereof; failed and neglected to monitor and supervise the qualifications and performances of its attending residents, interns and other professional staff; failed and neglected to conduct an appropriate investigation or background check into the professional history and records of physicians and other members of its staff from previous and/or other hospitals and/or health care facilities with which they had been previously employed or affiliated; failed and neglected to conduct the necessary periodic reviews of the competence of its medical staff as required; failed and neglected to properly supervise and control the actions and performance of physicians and other personnel practicing and/or employed by and at their respective facilities; failed and neglected to strictly comply with statutory credential requirements and in generally failing to observe all necessary protocol and practices and procedures, both statutory and in common and in usual use in the profession, all of which resulted in damages to the plaintiff.

53.    That defendants MONTEFIORE and BRONX LEBANON, in rendering services to the plaintiff at the aforesaid Montefiore School Health Program at the DeWitt Clinton High School and at the Bronx-Lebanon Hospital Center, through their respective agents, servants, staff members, employees and/or independent contractors, owed to the plaintiff a duty for said agents, servants, staff members and/or employees to possess a reasonable degree of learning and skill, the duty for them to use reasonable care and diligence in the exercising of their learning and skill, the duty to use approved methods in general use and the duty to use their best judgment in the care and treatment of the plaintiff.

54.    That defendants MONTEFIORE and BRONX LEBANON were negligent, careless and committed malpractice in permitting its staff members, employees, physicians,

- 15 -

residents, interns and/or independent contractors including all other medical personnel, to perform medical, gynecological and pediatric care, treatment and services at the aforesaid Montefiore School Health Program at the DeWitt Clinton High School and at the Bronx-Lebanon Hospital Center, although said defendants knew or should have known that said individuals did not possess the requisite knowledge, experience or skill required to provide medical, gynecological and pediatric care, treatment and services to the plaintiff; said defendants negligently permitted and allowed said individuals to perform medical, gynecological and pediatric care, treatment and services on the plaintiff although said defendants knew or should have known that said individuals did not possess the requisite knowledge, skill, learning and experience to safely perform such medical care, treatment and services, all of which resulted in damages to the plaintiff.

55.    That as a result of the negligence and malpractice of defendants, each of them, their agents, servants, staff members, employees and/or independent contractors, the plaintiff has been damaged and requires sums sufficient to compensate her for the damages she has suffered and such amount exceeds the jurisdictional limits of all lower courts which might otherwise have jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION

56.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the First, Second and Third Causes of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

57.    Plaintiff is a resident of the Bronx, New York.

- 16 -

58.    Defendant, ORGANON USA, INC., is a global pharmaceutical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling medicines in the field of women's health, including the contraceptive, NuvaRing.

59.    Defendant, ORGANON USA, INC. is or at all pertinent times herein mentioned was a wholly owned subsidiary and the largest pharmaceutical business unit of Defendant, ORGANON NV.

60.    Defendant, ORGANON PHARMACEUTICALS USA, INC. is a global pharmaceutical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling medicines in the field of women's health, including the contraceptive, NuvaRing.

61.    Defendant, ORGANON INTERNATIONAL, INC. is a global pharmaceutical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling medicines in the field of women's health, including the contraceptive, NuvaRing.

62.    Defendant, ORGANON INTERNATIONAL, INC. is or at all pertinent times herein mentioned was a wholly owned subsidiary and a pharmaceutical business unit of ORGANON NV.

63.    Defendant, SCHERING-PLOUGH CORPORATION acquired the above named defendants in 2007 and assumed the liabilities attendant thereto, and has its principal place of doing business in New Jersey.

64.    In 2008, defendant SCHERING-PLOUGH CORPORATION acquired defendant ORGANON PHARMACEUTICAL USA, INC.; caused it to be dissolved as a corporation; and

made it a subsidiary. In so doing, defendant SCHERING-PLOUGH CORPORATION assumed the liabilities of ORGANON PHARMACEUTICAL USA, INC., as pleaded in this complaint.

65.     In 2009, defendant MERCK & CO., INC., which has its principal place of doing business in New Jersey, acquired defendant SCHERING-PLOUGH CORPORATION and assumed the liabilities attendant to both SCHERING-PLOUGH CORPORATION and the previously named ORGANON defendants, plus became liable for injuries which the said product caused after it took control of it.

66.     Pursuant to prescription, plaintiff utilized defendants' ring product in 2010.

67.     Defendants marketed, promoted and advertised the ring product to physicians and to the public as equally or more safe than oral contraceptive pills, whereas it was less safe than the pill, as defendants knew.

68.     Defendants marketed, promoted and advertised the ring product as presenting less of a risk of thrombotic side effects than other means of contraception because of its relatively low amount of estrogen in an attempt to disguise the fact that it had a high level of a dangerous third-generation progestin, capable of causing thrombotic side effects.

69.     Defendants failed to warn prescribing physicians and the public that the ring product was associated with more thrombotic events than the birth control pill.

70.     Defendants failed to provide proper and full information as to safety to the Food and Drug Administration, which regulated the sale of the ring, and thereby avoided having appropriate warnings and cautions added to its labeling and advertising.

71.     Defendants obtained permission to market the ring product by presenting safety data derived from studies on the pill and failed to do proper clinical investigation with actual users of the ring product.

72.     In actuality, as defendants knew but failed to disclose, the ring product released a continuous stream of hormones (progestin and estrogen) into the body of the user, and at a higher level than the pill provided, and more than defendants stated were being released into the blood stream in its promotional literature.

73.     Plaintiff in June 2010 sustained an injury due to her use of the ring, namely a pulmonary embolism, which led to a cardiac arrest and brain damage.

74.     As a further result plaintiff incurred damages, both special and general.

75.     Plaintiff and her prescribing health care providers were unaware of the increased risk of the use of the ring and would have used and prescribed other methods for birth control if they had been so informed.

76.     Up until the time that plaintiff was injured, the Food and Drug Administration had never forbidden the defendants from mentioning the subjects about enhanced risks stated above, nor had it ever prevented defendants from enlarging on their warnings about thrombotic risks associated with the use of the ring product.

77.     The said ring product was defective and unreasonably dangerous when defendants placed it into the stream of commerce.

78.     The defects in the ring product were a proximate cause of the injuries suffered by the plaintiff and the damages thereby incurred.

79.     By engaging in the said conduct, defendants have become strictly liable to plaintiff, pursuant to applicable state law.

80.     Defendants' ring product was defective and unreasonably dangerous when Defendants placed it into the stream of commerce.

81.    Said conduct of defendants was so willful, wanton, malicious, reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

82.    As to the defendants' said conduct, plaintiff has sustained general and special damages in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF
### ACTION FOR BREACH OF WARRANTY

83.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the First, Second, Third and Fourth Causes of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

84.    Defendants have breached applicable warranties, express and implied, including safety, pursuant to applicable state law and are therefore liable to plaintiff.

### AS AND FOR A SIXTH CAUSE OF
### ACTION FOR NEGLIGENCE

85.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the First, Second, Third, Fourth and Fifth Causes of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

86.    Defendants were negligent in designing, manufacturing, inspecting, testing, labeling, monitoring, promoting, distributing and selling the product, pursuant to applicable state law.

87.    Defendants are therefore liable to plaintiff.

88.    The conduct of defendants was so willful, wanton, malicious, reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### FOR FRAUD AND MISREPRESENTATION

89.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the First, Second, Third, Fourth, Fifth and Sixth Causes of Action, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

90.    Defendants deliberately and carelessly made false and misleading statements about the safety of the product, on which plaintiff and her prescribing doctor relied to her detriment.

91.    Defendants concealed research which it did or had done for it, or changed it before presentation to the FDA or for publication so as to minimize health hazard, and caused to be published articles unjustifiably representing the safety of the product.

WHEREFORE, plaintiff demands judgment against all defendants herein on the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action herein in such sums as a jury may find fair, reasonable and just, together with the interest, costs and disbursements of this action.

Dated: New York, New York
        November 22, 2011

RHEINGOLD VALET RHEINGOLD
McCARTNEY & GIUFFRA LLP
Attorneys for Plaintiff

By: _____
    Sherri L. Plotkin, Esq.
    Paul D. Rheingold, Esq.
    Office & P.O. Address
    113 East 37th Street
    New York, NY 10016
    Tel.: 212-684-1880

- 21 -

## VERIFICATION

The undersigned, an attorney admitted to practice before the Courts of the State of New York, hereby affirms, under the penalty of perjury, as follows:

That I am a member of the firm of RHEINGOLD VALET RHEINGOLD McCARTNEY & GIUFFRA LLP, attorneys for the plaintiff herein.

That I have read the foregoing **COMPLAINT** and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief; and as to those matters I believe them to be true.

The grounds for affirmant's knowledge and belief as to all matters therein stated are documents in the possession of plaintiff's attorneys and conversations with the plaintiff.

The reason this affirmation is made by the undersigned and not by the plaintiff is that plaintiff resides outside the County wherein RHEINGOLD VALET RHEINGOLD McCARTNEY & GIUFFRA LLP maintains its offices.

Dated: New York, New York
       November 22, 2011

                                        SHERRI L. PLOTKIN

25

## CERTIFICATE OF MERIT

SHERRI L. PLOTIN, an attorney duly admitted to practice in the State of New York, affirms, under the penalties of perjury, the following:

That I am a member of the law firm of RHEINGOLD VALET RHEINGOLD McCARTNEY & GIUFFRA LLP, counsel for the plaintiff(s) in the within action and as such am fully familiar with all the facts and circumstances surrounding the within action.

I was unable to obtain the consultation required by paragraph one of Section 3012-a of the CPLR on the basis that a request has been made for the plaintiff's medical records from the defendants and such records have not yet been produced.

Dated: New York, New York
      November 22, 2011

SHERRI L. PLOTKIN